We will begin with No. 241796, Dometic Corp. v. ITC. Mr. Howe. Good morning, Your Honors. Stephen Howe on behalf of Appellants. May it please the Court. We are here today because of two erroneous claim construction decisions in an ITC investigation between my clients, Dometic, the inventors and manufacturers of revolutionary nautical air conditioning units and their former distributors who have been infringing the claims of the 351 patent by importing copies of the embodiments of that invention. As it relates to the first claim construction decision, the Commission found that Dometic's former product, the Vector Compact, anticipated claims 1, 2, 4, 5, and 7 based on an erroneous construction of the term guiding cover. The Commission purports to have adopted Dometic's proposed construction of that term, but it in fact did not, and today's decision is thus to be rendered de novo. Specifically, Dometic proposed that the term guiding cover, consistent with its use in the claims and specification, is a part of the assembly that is a fan plate, which is a cover-like element that includes a flat section with a circular opening for directing the air to the adjacent blower and has a cylindrical section extending from the opening. The Commission, can I just, is there, I know that you are making the argument that the guiding cover can't be part of the main body. Is there anything else to this point for you, like fan-like or cover-like or whatever those terms are? We aren't disputing that the Commission found a flat section or a hole or a protrusion. The crux of our argument here is that what the Commission found was on the main body rather than on the assembly. Okay, so, and that argument gets off the ground for you by noting that the claim language says a main body and a blower and an assembly, and that suggests that the assembly can't be part of the That's correct. So there's some kind of, I mean, let's call it a presumption maybe to that effect. It doesn't feel to me like it's a very strong presumption, and if it's not a very strong one, then the pieces of the rest of the intrinsic evidence work rather strongly against you, right? The abstract in particular speaks of this as being part of the main body, or I misremembered. Well, the Commission relies on one errant statement from the abstract. You're correct. Let's take the Commission out of it. Okay. If you say this is de novo, let's just talk about the sources of claim construction. So the one statement in the abstract that mentions the air conditioning unit includes a main body, including an assembly. That statement conflicts with the consistent and repeated statements elsewhere in the patent, and most importantly the claims that consistently describe the main body and the guiding cover as separate elements. How many places in the spec do you cite for that? I only found one. Yes. So the specification describes APPX 327 at 135 to 37. Where are we? Column and line number. Column 1, lines 35 to 37. Air conditioning system for nautical vehicle includes a main body, a blower, and an assembly. Figure 23.  We're back at column 1. What lines? Oh, apologies. Column 1, lines 35. We're on the 351 path? Yes. I'm looking at column 1. Column 1, lines 35 to 37. Yes. And it states in accordance with one aspect of the present invention, an air conditioning system for a nautical vehicle includes a main body, a blower, and an assembly, which is different than the phrasing of the abstract. And as this court has noted, the abstract is intended to permit a quick understanding of the gist of the invention and not to override the body of the specifications or broaden the claims. This is confirmed in Coectel Wireless for conning like Phillips, moreover confirmed by 37 CFR 1.72. Elsewhere in the specification, APPX 329, column 5, lines 40 to 41, notes that figure 23 is an isolated view of the guiding cover of the assembly, showing it on its own rather than as the rest of the air conditioning unit or the main body. But then there isn't a reference in the spec to the everything above the cover as part of the main body? Yes. That would include the assembly. Apologies. I believe Your Honor is referring to column 11, lines 25 to 26. For me, what happened was that it looked to me like the claim itself identifies the three separate elements. And according to Google's case, that creates a presumption. So the question is, does the presumption overcome? And we have two or three cases where they say it overcomes. And it looked to me here like there's some evidence in the spec that points one way, and there's some that points the other way. So there's some evidence suggesting that they're separate, and there's some evidence suggesting that they don't have to be separate. Then to me, the question was, how do you decide? What's the test? Yes. If the presumption has any weight at all, which it may not. The test is whether the – well, one way of analyzing it per Becton and per Google is whether the specification consistently describes the elements as separate. And here, Your Honor pointed to the statement, the main body comprises the drain pan 100 and what is mounted above it. But the patent describes any manner of connections of these various elements. And in some manner, the blower itself is connected through the assembly to the main body. It does not become subsumed into the definition of main body just because it is higher in space and in some way tangentially connected to the main body. Can I ask you this question? And I'm going to be imprecise because the notion, which seems to me incredibly important in the way courts actually do claim construction, is somewhat imprecise. Explain what it is about the idea of the invention that would support your insistence that this collar-like thing, the guiding cover, can't be part of the main body in the sense that an exterior surface of the main body can function that way. What's the idea behind, oh, this was a really cool advance? Yes. I believe, as Mr. Pabitz testified, the vector compact, the way that the blower pulled down on the cylindrical protrusion, which was just a cylindrical protrusion sticking out the side of the main body, it did not allow for full or proper or easy rotation. And by having this as its singular unit that hangs off the side, the force of the blower pulling down on it doesn't just depress the cylindrical protrusion. It allows for consistent and clean rotation, and that is part of what allows for the 270-degree rotation as claimed in Claim 18. Moreover, what I think is an equally important point is this is how the patentee chose to limit their invention. If they chose to claim it more broadly, they could have, but they chose to claim it in this limited manner, and they should be afforded the way they chose to claim the invention. Moving on to Claims 18 to 22, unless your honors would like to further discuss guide and cover. The question at hand for the second claim construction decision is whether, in addition to rotation of the blower via the claimed assembly, as in Claim 1, Claim 18 also requires a second axis, second structure, and second manner of rotating the blower separate from the assembly itself. The Commission found that it does, largely dividing the claim into two portions. First, the Commission focused on the portion from lines 10 through 20 on APPX333 and found that it relates to the rotation of the blower by way of and a result of the assembly and its guide and cover. There's no dispute about those lines. Where there is a dispute is with respect to lines 7 through 10, beginning with the phrase, the blower being rotatable about a first axis. According to the Commission, lines 7 to 10 relate to the rotation of the blower during installation through rivets between the blower itself and the duct element, and that this portion of the claim has nothing to do with rotation afforded by the claimed assembly. The prosecution history, dependent claims, and specification all confirm, however, that Claim 18 only requires one structure for and one manner of rotating the blower, and that's the assembly. First, during prosecution, the claim that became Claim 18 was originally written without the language of lines 10 to 20. Instead, the only rotation described in that claim was that discussed of contested lines 7 to 10 that the Commission asserts is unrelated to the assembly. After Claim 1 was amended to describe in detail the elements of the claimed assembly, such as the guide and cover, Claim 18 was amended to incorporate almost the exact same assembly-related language as Claim 1, yet it still retained the bulk of its original language. This resulted in the inclusion of the phrase second axis, because Claim 1 referred to the assembly-driven rotation as such. Do I remember correctly that Claim 18 differs from Claim 1 with respect to the rotate about an axis limitations, in that Claim 1 is talking about the fan blades being something that is rotated about an axis? Yes, that's correct. In fact, in Claim 1, the first axis is the rotation of the fan blades. And that's also what's disclosed in the specification, right? That's correct. That's disclosed in Figure 30. Is there anything in the specification that talks about rotating the elements that are in Claim 18, about a first axis and a second axis expressly? No. Column 12, which you'll likely hear in a minute, refers to a preferred installation orientation, but it never discusses an axis other than the assembly axis. The only times first or second axis, those phrases are used in the specification, is with respect to rotation by the blower, or sorry, rotation by the assembly, and rotation of the fan blades. There's no mention of a third axis. It does use the phrase an axis at times, but when you dig into the specifics of that, it's always referring to the assembly-driven rotation or the fan blades. But the first axis in Claim 1 is different from the first axis in Claim 18? That's correct. Claim 1 actually discusses two distinct structures, fan blade axis and assembly axis. Claim 18 is discussing the same manner of rotation from different perspectives. And while it might seem a little confusing on its face there, the prosecution history does confirm this, in fact. As originally written, Claim 18 only contained, its only rotation language was that of disputed lines 7 through 10. Now, if the commission's construction. Do these things come in a box that have to be assembled? The blower? I mean, when you buy one of these things, either the blower is going to be facing to the left or the right, correct? When you buy the DI products? My point is, you look at the pictures and they say either the blower, which will be connected to the duct, is either to the left or to the right. Yes, with the DI products and the infringing products, it can be rotated around to both lateral sides. At some point in the beginning, you're putting the thing together, it's going to be pointed to the left or the right. And you fix it with bolts, right? Yes. Well, the one way that the DI products work is the blower is mounted to the duct element with bolts, but that is not what permits the rotation. The rotation is slidingly adjustable about the guiding cover, and it can rotate with respect to the main body. So, yes, it could show up aimed one way or the other way, but that is all permitted by the assembly, not this idea. It looked to me like that first, and that just had to do with the fixing so that the blower is going to be either to the left or to the right. So you're either moving it either to the left or to the right. Well, that is what the commission found, but we would dispute that. The claim language seems to suggest that's what it is. If you look at dependent claim 22, which notes that it includes a clamp element for maintaining the blower oriented with respect to the main body, wherein only loosening the clamp, the commission has admitted that that relates to the assembly rotation. But that claim was pending at the time that claim 18 only contained its original language, which is the disputed language of line 7 to 10, demonstrating that the original language must have related to the assembly rotation itself. There's no disclosure of rotating or a third axis of this rotating. You have exhausted all your time and, therefore, used up your rebuttal. I'll give you two minutes back. Thank you. I'd like to save that for rebuttal. Thank you, Your Honors. May it please the Court. I am Nam Oh Kim for the commission. I'd like to pick up on the discussion regarding the first and second axis limitations in claim 18. Dometic's main problem here is that its construction would read out the first axis limitation out of the claim and render it meaningless, because in Dometic's view, only the second axis rotation is required to satisfy the claims to different rotations. Not only that, the prosecution history is very helpful here, because Dometic is trying to recapture the claim's scope that was narrowed during prosecution to require the two different rotations in order to overcome the prior art. Claim 18. What's the purpose of the first axis rotation? Can you explain to us how this thing works? Yes. So the commission's brief on page 41 best explains the two rotations, Your Honor. So on that page 41 at the bottom right, you can see modified figure 30B-2, which has been modified according to figure 22, which is also shown in that same page 41. I had trouble understanding that in the English language. Can you explain in the English language how the first axis works? Yes, absolutely. So in that figure, you see a blower in green. Blower in green. Are we looking at the figure 22 at the top of the page? No, Your Honor. Figure 30B-2, that's been modified on the bottom right. Okay. So you see the blower in green, duct element in yellow, and the guiding cover there. So the first axis rotation is represented by that green circle. By which? And where the blower rotates around. There's the green circle. I see the circle, yeah. Yeah. So the claim language for that says, quote, the blower being rotatable about a first axis. And the second axis rotation is represented by the yellow circle. Yes. And the claim language there says, quote, the duct element being rotatable. I understand those two, but I don't understand functionally how the blower is working. How do you achieve the first axis with the actual structure, with the machine? So the patent, for example, in column. Can you answer that? You understand. Yes, Your Honor. You understand what I'm saying? So, yeah, yes, I do. You are asking for the structure. We have this machine, right, and I understand how the blower and the little green ring, which is the thing that they screw on, right? It's the clamp, right? The clamp is for the duct element rotation around the guiding cover for the second axis, Your Honor. The green thing is the clamp, right? No. The circle? The duct element, the yellow thing, is how the clamp is used. The duct element is, yes, but what is the green circle? What structure is that? So the specification discloses. That's an illustration of the rotation, but it essentially matches 186 up the top of the page. Correct, Your Honor. Which is the clamp. So the clamp is actually for the duct element, and the specification for the blower's rotation about the duct element. Specification discloses. How is the blower connected to the duct element? Specification says apertures 210 for coupling the blower to the duct element. The apertures are not shown in that figure. Is there a reason why you can't explain to me in the English language how it works? No. You can see, for example, on figure 24, there are these apertures with holes. So that's how you attach. In what way is it rotating? I think that's the question. Tell us how the blower is rotating and also how the duct element is rotating. Yes, Your Honor. So one example way to rotate the blower around the duct element, the first axis rotation is using the apertures, right? The patent says the blower is fastened to the duct element, and you can adjust the orientation in which the blower is fastened to the duct element. And the claim talks about it being fixed either in one direction or another, correct? The claim requires that the blower be rotated. The first axis. Correct, Your Honor. It has to rotate to point to these two different directions. So I'm going to test an image to see if this fits. Forget about blowers. Think about like a slurpy cup, all right? And there's a lid that goes on the slurpy cup, and there is a small opening at the top of the lid where your mouth is going to go. And consider that opening itself having a little rotatable spigot. So the spigot there is the blower, which can change in direction around the little opening, and the whole thing, the whole lid, can rotate around the cup. That's the assembly going around the guidance cup. Yes, that's a perfect example, Your Honor. And as this, I don't know, well, you know, I don't know what that, the 30B figure, the yellow figure, shows the opening not being centered at the top of the lid but off to one side, as one might expect. And so you can get kind of two degrees of freedom about the ultimate direction. Is that what's going on here? Yes, absolutely, Your Honor. That's exactly correct. And how do you achieve this? I mean, assume I have this physical device, and the device is with me, and the blower outlet is pointed sort of down here. How do I achieve the first axis rotation? So the blower is bolted. Do I put my hand on the blower and pull it? No, you have to unbolt, right? You have to unbolt the clamp. Not the clamp, but how the blower is bolted to the duct element. You unbolt it. You rotate it. So I have to take it apart? That's one exemplary means, according to the patent. To achieve the first part. I'm sorry. Why not the clamp? Figure 22 shows the clamp being the connector between the duct element and the blower. So why can't you just loosen the clamp and rotate the blower? That's for the second axis rotation, at least based on figure 22, Your Honor. Isn't that what we're talking about? No, I'm still trying to talk about how this thing works for the first axis. I understand how once you release the clamp, the thing is fixed in such a way that I gather you put your hand on the blower, correct? Yeah. To move it. And once it's locked in in the first axis configuration, so it's locked in either left or right, somewhere between 6 o'clock and 12 o'clock. It's locked in with bolts. Then you loosen the clamp and then you can rotate it within that range of whether it was left or right. You can't, if it was set left in the beginning, you can't use the second axis to turn it to the right. You would have to unbolt it, correct? Your Honor, that's correct. That's one exemplary way to do it according to the patent, but nothing in the claim actually. The first axis is all about assembling the product in the beginning, bolting it in in such a way to have it either facing left or right. The second axis is adjusting the range of motion within that left or right direction that has been fixed in the first axis implementation, correct? Yes, Your Honor, but then that assembling is you have to rotate the blower first in the first axis rotation to orient the blower in the right way. So that is the first axis rotation required by the claim. I'm sorry. If it came out of the box, it would be loose. The bolts wouldn't be fixed. So you would decide how you want to take it apart. I don't understand how you bolt the blower into the duct element. You use screws? How do you bolt it in? Yes, that's one exemplary means contemplated by the patent. You can see that on Figure 24 and the disclosure in Column 11. The second axis is all about achieving the assembly, achieving either the left or the right direction. Correct, Your Honor. And I see that I'm out of time. May I briefly address the guiding cover limitation in Claim 1? So Dometic's main argument is that the patent requires the main body to be separate from the assembly and its component, the guiding cover, but nothing in the patent requires such separateness. And the presumption, to the extent that it exists, is rebutted. Do you agree that there is a presumption of separateness because of the way the claims are written? If it exists. The claim says three parts, one, two, three. Correct. Under our law, does that create a presumption, yes or no? It appears that it might, but that's rebutted. It doesn't appear. Does it, yes or no? Yes, there is a presumption according to Google. And then to rebut the presumption, what is this test? Let me ask this question. Assume for purposes of argument that in the spec there were four references that suggested that it was separate and there were four that suggested that it wasn't. So assume, listen to me, please, if you said the spec is in equipoise, has the presumption been rebutted, yes or no? Well, if there are equal disclosures in the patent saying it can be separate or it cannot be, then you would have to look at something else like the prosecution history and so on. I'm just talking about rebutting the presumption. I don't think this Court has answered that question. You just have to look at the particular context of the patent. But here, nothing in the patent says the main body has to be separate from the assembly. For example, the abstract expressly says the main body includes the assembly and the guiding cover. The evidence that you have in the spec for saying that it doesn't have to be separate is the abstract and then the reference saying that everything above the bottom is in the body. Correct, Your Honor. Those are the only two data points that you cite to in the spec, correct? There are more. Any more? Yes. Where? So the spec also says the air conditioner is... Can you give us the line? Yes, that's column 11, lines 24 to 25. 24 to 25. The main body comprises the drain pan. That's where the specification says the air conditioner can largely be divided into a main body and the blower. And you want to read that as possibly a suggestion that this other part that's talked about must be part of one or the other. Correct, Your Honor. So everything is divided into either the main body or the blower. So a component that is not labeled as part of the blower has to be part of the main body. Why? Because you have to read the patent as a whole. And the abstract expressly says the main body includes the assembly and the guiding cover. So there are three points then. Line 11 includes this main body blower also, everything mounted above it, and then the abstract. So those are the three data points that you point to in the spec to rebut the presumption. Is there a fourth?  Yes or no? Well, those three are the main ones, but... When you say the main ones, I'm asking you, is there a fourth? Yes, those three are the ones that... That's all you have. ...the commission cites. Right. Right. But then if you look at the portions that Dometic cites, for example, the one that says the air conditioner includes these components, right, the main body, the assembly, the blower, nothing in that statement says anything about the main body being separate, right? There is no statement in the patent where it says... The main body being separate from what? From the assembly and the guiding cover, Your Honor. There is no statement anywhere in the patent that says the main body has to be separate from the assembly and the guiding cover. There's nothing in the spec that says that. The claim, however, claims a main body and a blower. That would suggest pretty strongly that the main body and the blower are different from one another, different structures. That's not disputed, Your Honor. Like, the dispute, no one disputed that the main body and the blower are separate. The dispute is whether the main body... It says then the blower and, so the blower is being distinct from the assembly in the claim. Yes, the blower, but that's really not an issue on this appeal, Your Honor, like whether the main body has to be separate from the blower. The patent does say, however, that they are separate, but the main dispute is whether the main body can include the assembly and the guiding cover. And the abstract expressly says that, right? I know, but the logic of your argument is that the assembly could be part of the blower. Because you're saying there are no separate and distinct elements. You're saying, in fact, you argue that the body, everything above the base is in the main body, including the blower. No, Your Honor, because you have to... You're even arguing that the blower and the main body are not separate. The logic of your argument... So, the patent says... Do you understand what I'm saying? I mean, you're trying to draw a distinction between the blower and the assembly. Yes, Your Honor. The main body, it seems to me that you've got a problem. I'm not drawing the distinction between the assembly and the blower. I'm simply referring to Dometic's argument that requires the main body to be separate from the assembly and the guiding cover. But the patent's abstract, for example, expressly says the opposite. It says the main body includes the assembly and the guiding cover. The issue is whether the main body includes the assembly. Let's hear from your supporting party. Yep. Thank you, Your Honor. I'm sorry. Good morning, Your Honors, and may it please the Court. Paul Barkowski, I'm here on behalf of the interveners, who are the prevailing respondents below. With your indulgence, I'll pick up where Mr. Kim left off. Your Honor, Judge Clevenger, you asked if there's additional support in the specification for the notion that the main body includes the guiding cover. And there is. It's in the specification. That it can include the guiding cover, right? Not that it has to? Or are you arguing that it has to? I would say probably the more accurate phrasing is that it can. But what I'm going to point to, I think, pretty clearly shows. And what I'm going to point to is Figure 10. It's at Appendix 306. And in one of the portions of the specification that Mr. Kim pointed to, that's Column 11, Line 25. They assign the main body reference number 4. So Figure 10, this was actually added during prosecution, the reference number 4, to demonstrate what the main body is. So Figure 10 is essentially a picture from the top of the guiding cover and all the components. I'm sorry, the drain pan and the components above it. And if you look closely, Your Honor, there's a circle protruding from the evaporator. And you can see it's bolted in at the top. Oh, I'm sorry. You just used the word evaporator as though we should know. My apologies, Your Honor. So the evaporator is essentially, the top of it is the rectangular piece. That is, right, there's a circle at the top and then there's a rectangular piece at the bottom. That's the evaporator. Which one, the circle or the? I'm sorry, the rectangle. Okay. The rectangle is. There's one real rectangle, right? That's right. So the top of the evaporator is the rectangle at the bottom of that picture. And we're looking from the bottom up? No, we're looking from the top down.  I'm sorry, this is terribly confusing. So we're looking from the top. But when you say top, in talking about the picture, do you mean the top of the page or the bottom? I'll start again. Yeah, so at the top of the page is a circular portion. That would be. Looks like, sort of like a light bulb. Correct. That would be, that's really where the. Aren't you saying if we had one of these things in front of us, we would be standing up looking down at the top of it? Correct. That's what you're trying to. Correct.  And what point do you want to make about this? So the rectangular piece at the bottom of the picture. The whole bottom half of the picture. It's not at the bottom, right? Correct. Okay. That is the evaporator. Okay. The guiding cover covers the evaporator. And it has a protrusion from it. It's the cover over the evaporator? Correct. It covers the top. Not the evaporator. We're looking at the cover. The evaporator is a set of coils underneath this surface. Is that right?  Okay. So. And the little lip that shows the two screws on it is holding the guiding cover in there, right? That's correct. And then if we were to look at the picture of the guiding cover, which has been pointed to a few times, it has a circular protrusion coming out of it. So you're talking about figure 22 and 23 now? Yeah, figure 22 shows the guiding cover. Figure 23 shows it. And you can see that circle that comes out of the guiding cover. And you can see that circle in figure 10, which depicts the main body. Where do you see the circle? The circle is now at the bottom of the picture. To the right. Where? In the lower half of the picture. When you say bottom, I'm looking at the bolt sticking at the bottom. Correct. You mean the hole? The lower half. The guiding cover covers the top of the evaporator and the front. Wait, wait, wait. That can't be so because the thing that has the two screws on it is the lip in figure 23. When we're looking at figure 306, figure 10. And you see this lip thing here is that. And those two screws are on the top of the evaporator? Yeah, you're trying to show us where the guiding cover is in figure 10. Correct. The guiding cover has to be underneath what I'm calling the lip that has the two screws on it, which is going down like this.  And you can see that circular protrusion. Where is the circular protrusion? I don't see a circular protrusion. It's coming out of essentially what would be the front of the evaporator, which is in the lower half of the picture. It's the rectangular piece. Yes, I know where that is. And it's bigger than the horizontal hanging tab that has the two screws on it. Correct. And the guiding cover shown in 22 and 23 shows a circular protrusion that is certainly not wider across than the hanging tab. I understand, but there's a clarification. Can I ask you something? Is this in your brief at all? It's actually in Dometic's brief about the prosecution history where they added this. I'm just asking, like, you know, pointing out figure 10 and pointing out where this is in figures. Is that in your brief? We cited to the, I don't think the figure 10 references. We cited to the text, which denotes it number 4. To answer Judge Taranto's question, the tab that you're seeing is tab 212 in figure 22. So it's narrower than the guiding cover. And that's what makes it. In figure 10, you've talked about the evaporator, but we're looking at what's the round thing on top. I think there's a fair amount of componentry there. The biggest piece is a condenser. The round thing that sits on top of the evaporator is in figure 10. What is that globular structure that's sitting on top of the evaporator? It's on the top half of the picture. Is that what I'm talking about, sir? That's the condenser. What is that? The condenser. Condenser. And where would the blower be? The blower would connect into the evaporator at the guiding cover. And what's the little nub looking down on the top, the little nub that's sticking out to the right of the evaporator in figure 10? That's just a portion of the drain pan, Your Honor. Of which? Of the drain pan. Okay. If I could turn to the first and second axis question. And, you know, you're using, trying to keep this crisp. I will. Judge Stoll, you asked a question about the first and second axis in Claim 1. And we made a point at page 43 to 44 of our brief that if you were to interpret one type of rotation, that is the rotation of the duct element around the guiding cover, to satisfy both axes, you could equally in Claim 1 have a situation where that rotation of the entire duct element around the guiding cover, to adjust the orientation of the blower, could satisfy the fan blade rotation. In Dometic's reply, page 24 to 25, they basically said that's correct. And that the rotation of the entire assembly with the blower would satisfy that. And I think that points out, essentially, the issue that goes to the heart of this case, that those first and second axes have to refer to different structures rotating about different axes. Or else what you have is an important element that was added to gain allowability and that the inventor describes the crux of the invention being read entirely out of the claim. And everything can be achieved by one type of rotation. And with your indulgence, I appreciate that, Your Honor. I'll leave the rest of my time. Thank you. You have five minutes. Thank you, Your Honor. I'd like to respond to a couple points raised by counsel. First, commission counsel referenced, with respect to the Claim 18 issue, disclosure on column 12 of the patent as allegedly disclosing a rotation. This is the issue you guys were discussing about installation. At line 10, that specifically states that it relates to, quote, attached at a predetermined orientation. And that disclosure only ever gives one orientation that anybody would ever attach the blower at. One that allows it, when it's rotated around the axis, to not go above the top of the blower or the main body. There's no disclosure of a second orientation somebody would attach it at. There's no disclosure of a reason to do anything other than that one predetermined orientation. And that's not rotation. That is just one suggested way of installing it. It never says you should uncouple it, rotate it, and recouple it. It never says, here are three different possible ways. I thought you had indicated, and just correct everything that's wrong and what I'm about to say. That you had indicated that you thought rotate and adjust were synonymous relevantly here, so that unscrewing and then turning to a different set of whole screw combinations would be a form of rotation, because it's certainly a form of adjustment. Unless your view is that the rotations here have to be available without any kind of dismantling. Our view is, you're correct. We have said that rotate and adjust, as used in the claims, are synonymous. And that's because in each case, it refers to about an axis. But not every place in the specification uses the terms in that way. For example, column 3, lines 7 to 10, states a method of adjusting an air conditioning device. We're not talking about rotating the entire air conditioning device. So not every time in the specification that it says adjust, is it synonymous with rotate. You have to look at what follows. Is it talking about taking it from one orientation to another? And our position, and hopefully this answers your question, is that column 12 doesn't refer to anything more than one position. So when it says adjust, it's not talking about rotating and changing from, say, the 3 o'clock to the 9 o'clock position. It's saying, this is how you should install it. And our position is that's not rotating. Another point I would like to respond to, can you tell me whether I should continue or stop thinking about my cup lid adjust spigot combination in thinking about what's going on here? I think that analogy is incorrect. Because in that analogy, you clearly disclose two different ways of altering. The patent never discloses a second way of rotating the blower. Every time it talks about rotation, it's talking about the fan blades or the assembly-driven rotation. So I think maybe if a specification fully describes something in the way you describe, it could be considered disclosed. But that's not applicable here. Turning to guiding cover, counsel pointed out two additional places that they contend show that the guiding cover can be part of the main body. The first part was column 11, lines 24 to 25. And commission counsel said that this states the air conditioner can largely be divided into a main body four and the blower two. Counsel omitted the three words prior where it says in fig one. And in fig one, you cannot see the entirety of the guiding cover or the assembly. They're obstructed. So what that is saying is what you can see in figure one can largely be divided. There's a lot of stuff that you can't see. So I don't believe that that reference supports their position. The second part is this figure 10 argument that intervener counsel was discussing. As Your Honor indicated, that was not in their briefing. Can I ask this? This has, I guess, what I was going to ask you about is whether figure one helps see why there might be something to the argument we heard about figure 10, which we were pressing back on by saying if we look at figure 10, what was suggested to be the opening for the guiding, the slightly cylindrical opening for the guiding cover seems much bigger than the hanging tab on the top. And at least figure 22 and 23 show the hanging tab to be as wide as the diameter of the opening. When I'm looking at figure one, I think I'm seeing something more like what's in figure 10 as described, a hanging tab. And then the guiding cover here is, I think, 170. And it extends, has a much larger diameter than the long side of the hanging tab. That looks like figure 10. It may look like figure 10. Including the little nub, I think, was the technical term used before for the drain pan at the bottom. Yes, the nub is not the guiding cover. But 170 is. I believe 170. 170 is the flat surface, right? Yes, the flat surface of the guiding cover. But the guiding cover is shown there. You can see the little feet sticking out. You can see most of the guiding cover. Some of it's inside the blower. I think what would help illuminate this is, if you look at column 5, line 17, it doesn't state that this is just the main body. It says that this is the air conditioner with the covers. So although there might be a 4 pointing to this figure 10, I don't think you can interpret figure 10 as only being the main body. That 4 doesn't have a circle around it. The description of this describes this as the air conditioner, not the main body. It mentions covers, which there's several different kinds of covers referenced in the patent. But so I don't think that this can be viewed as limiting. And regardless, that argument has been forfeit because it was never raised in briefing. I wasn't necessarily suggesting it was forfeited. I just thought that if it was in the brief, it would be helpful to see it if there was, like, colored coded figures or something, colored coding or something. I do think the patent itself is of record and arguments can be made. So, you know, go ahead and address the merits of it. I understand you're not suggesting it was forfeited. We have looked. That specific argument wasn't raised. But on the merits, if you look at the description of this figure, it does not say this figure only includes the main body. It says this is the air conditioning unit, which that includes a lot of different things. And I think that right there refutes their point. I see I'm over the gracious amount of time you gave me. Thank you, Your Honors. Thank you. Thanks to all counsel. Case is submitted.